UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM DIVISION
www.flsb.uscourts.gov

IN RE:
PALM BEACH FINANCE PARTNERS, L.P.,
PALM BEACH FINANCE II, L.P.,

      Debtors.

_____/

BARRY E. MUKAMAL, IN HIS CAPACITY
AS LIQUIDATING TRUSTEE OF THE PALM
PALM BEACH FINANCE PARTNERS
LIQUIDATING TRUST AND PALM BEACH
FINANCE II LIQUIDATING TRUST,

      Plaintiff,

v.

FULBRIGHT & JAWORSKI L.L.P.,

      Defendant.

_____/

CASE NO. 09-36379-PGH
CASE NO. 09-36396-PGH

(Jointly Administered)

Adv. Case No. 12-02123-PGH

**LIQUIDATING TRUSTEE'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE
COMPLAINT AND INCORPORATED MEMORANDUM OF LAW [ECF No. 17]**

    Barry E. Mukamal ("***Plaintiff***" or "***Liquidating Trustee***") responds ("***Response***") to

Defendant Fulbright & Jaworski, L.L.P.'s ("***Fulbright***") Motion to Dismiss the Complaint and

Incorporated Memorandum of Law [ECF No. 17] ("***Motion to Dismiss***") and states:

## THE LIQUIDATING TRUSTEE'S ALLEGATIONS IN THE COMPLAINT

**A.    The Palm Beach Funds and the Implosion of the Conspiracy**

The Palm Beach Funds[1] were created to provide financing to Petters' business operations.[2]  By September 2008, the Palm Beach Funds raised huge sums of monies from third parties, which they invested with Petters.[3]  However, Petters' operation was a fraud.[4]

On September 24, 2008, federal law enforcement executed search warrants and shut down Petters' operations.[5]  On October 2, 2008, the United States publicly filed the United States Complaint, commencing the Receivership Case and announcing (among other things):

> In summary, the United States' investigation has revealed that the Defendants have devised and implemented an elaborate scheme to defraud individual and group investors.
> ***
> The magnitude of the fraud perpetrated by the Defendants is substantial and extends to at least 20 identified investors or investment groups.  It is estimated that the Defendants have to date profited in excess of $3 billion from their illegal activities.
> ***
> The United States has probable cause to believe that the Defendants are dissipating, and will continue to dissipate, the proceeds of their fraud scheme.[6]

On October 6, 2008, Mr. Kelley was appointed as receiver for Petters and PCI (among other entities), the latter being the primary entity through which Petters operated the fraud.[7]

---

[1] Defined terms have the same meaning as set forth in the Amended Complaint [ECF No. 12] ("*Complaint*").

[2] Compl, ¶13.

[3] *Id.* at ¶¶ 6, 13, 20.

[4] *Id.* at ¶4, 13, 20.

[5] *Id.* at ¶14.

[6] *Id.* at ¶15.

[7] *Id.* at ¶16. Fulbright's Preliminary Statement has a number of subtle and not subtle factual errors. For instance, Fulbright states that "the corporate perpetrators of the Ponzi Scheme filed for bankruptcy protection in Minnesota." This is false. Mr. Kelley, as a district court appointed receiver for PCI and its affiliates, filed the voluntary petitions for the Petters Entities.  More problematic, Fulbright states that "the Committees controlling the Funds voted to hire *another* firm as bankruptcy counsel on December 17, 2008, less than two months after the Funds retained Fulbright."  In its Statement of Facts, Fulbright claims that on "December 17, 2008, the Committees controlling the Funds voted to hire another firm as bankruptcy counsel and in November 2009, Berger Singerman, P.A. initiated bankruptcy proceedings for the Funds." Aside from being outside the four corners of

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

**B.     The Palm Beach Funds Retain Fulbright**

1.     <u>The Retention</u>

The Palm Beach Funds immediately realized they were financially devastated, insolvent and required specialized legal counsel with expertise in, among other things, bankruptcy and insolvency matters.[8]  On October 3, 2008, the Palm Beach Funds were introduced to Fulbright. Fulbright communicated with the Palm Beach Funds about (i) Fulbright's extensive bankruptcy and insolvency expertise; (ii) the Palm Beach Funds' business operations and situation; (iii) the devastating financial effect due to the Implosion of the Conspiracy; and (iv) a possible retention.[9] Thereafter, on October 16, 2008 ("***Retention Date***") the Palm Beach Funds retained Fulbright.[10]

The Retention Agreement entered between Fulbright and the Palm Beach Funds limited Fulbright's retention to (i) claims against Petters and his affiliated entities in bankruptcy / insolvency proceedings; and (ii) efforts to lift a certain asset freeze.[11]   Moreover, Fulbright expressly stated it would neither represent nor be "*directly adverse to*":

> General Partners or Limited Partners of the Funds and/or Palm Beach Capital Management, LLC, as the Funds themselves are the Firm's clients in this Matter.[12]

2.     <u>The Fulbright Team</u>

Fulbright told the Palm Beach Funds that Attorneys Kreps, D'Aquila and Clement would be 'spearheading' the engagement.[13]   Attorney Clement is a bankruptcy specialist, who,

---

the Amended Complaint, these statements are also false. As set forth in Paul Avron's supplemental declaration [ECF No. 29], Berger Singerman was retained to represent a steering committee of limited partners on March 2, 2009 and did not represent the Funds themselves until July 28, 2009.
[8] *Id.* at ¶20.
[9] *Id.* at ¶¶ 20-22
[10] *Id.* at ¶¶ 23-24.
[11] *Id.* at ¶ 24, Ex. B.
[12] *Id.* at ¶ 24, Ex. B at 2.
[13] *Id.* at ¶ 24, Ex. B at 2.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

according to his bio, "*spends his life in the middle of corporate financial difficulty.*"[14]   Attorney

Bolton, a Fulbright lawyer with significant responsibility on the file, is a board-certified

bankruptcy attorney and also a bankruptcy specialist.[15]

**C.     The Actual Scope of Services Performed by Fulbright for the Palm Beach Funds**

The Actual Scope of Services performed by Fulbright for the Palm Beach Funds was

expansive, and not limited as set forth in the Retention Agreement.  Fulbright:

>    a)      Considered, investigated and analyzed the status of funds frozen by district court orders related to the Receivership Case and held at U.S. Bank, N.A., and attempted to get them released to the Palm Beach Funds; and

>    b)      Worked on the claims against, and collection of funds owed by, Petters and his affiliates to the Palm Beach Funds, including in their bankruptcy and insolvency cases;

both of which were contemplated in the Retention Agreement.   But Fulbright also (and the

Actual Scope of Services included):

>    c)      Sought to have a representative of the Palm Beach Funds appointed as a member of the official committee of unsecured creditors in the Petters Bankruptcy Case and prevented another party from being appointed to serve in that position;

>    d)      Considered, investigated and analyzed whether Mr. Kelley should place a specific Petters Entity for which he served as receiver into bankruptcy, and then urged that he do so;

>    e)      Considered, analyzed, drafted and acted upon corporate governance issues, including the formation, procedures and operation of a 'steering committee' which would receive certain specified authority and powers from the Palm Beach Funds' general partner;

>    f)      Evaluated, investigated and then (upon information and belief) asserted claims on behalf of the Palm Beach Funds against Atradius Trade Credit Insurance, Inc. ("*Atradius*") and The Christensen Group, Inc. based on credit insurance policies procured by the Palm Beach Funds;

>    g)      Considered potential claims against an individual involved in the Palm Beach Funds' due diligence on Petters;

---

[14] *Id.* at ¶ 9, Ex. A.

[15] *Id.* at ¶¶ 9, 28.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

h)    Considered whether the Palm Beach Funds should file a lawsuit against non-bankruptcy parties;

i)    Analyzed the rights of the Palm Beach Funds to participate *via* criminal remission in assets seized by the United States of America;

j)    Considered mismanagement claims against the Palm Beach Fund's general partner; and

k)    Considered, investigated and analyzed whether Palm Beach Offshore, Ltd. ("***PBF I Offshore***") and Palm Beach Offshore II, Ltd. ("***PB II Offshore***," and together with PB Offshore, "***PBF Offshore***"), a multi-hundred million dollar lender to PBF II, could have its loans to the Palm Beach Funds re-characterized as equity, rather than debt; Fulbright filed a lawsuit on behalf of the Palm Beach Funds against PBF Offshore in the United States District Court for the District of Minnesota, Case No. 08-6138-ADM-JSM;

None of these actions were contemplated in the Retention Agreement.[16]    Importantly, while Fulbright addressing its client's corporate governance issues (¶ e above) or deciding whether to sue Atradius (¶ f above) are examples of Fulbright's professional outside of the Retention Agreement's scope of services, Fulbright's consideration of claims against the Palm Beach Fund's general partner (¶ j above) unequivocally violates the Retention Agreement's prohibition from being "*directly adverse to*" the Palm Beach Funds' "*General Partners.*"

Fulbright's recognition that the Retention Agreement's limited scope was not binding is evidenced in Attorney Kreps' written communication to a Palm Beach Funds limited partner:

"***I am a trial lawyer*** and our retention by Funds I and II is to get recoveries from Petters ***and other third-parties***."[17]

The Palm Beach Funds relied on Fulbright for advice and counsel outside of the scope of that set forth in the Retention Agreement.[18]    Fulbright accepted this reliance and acted accordingly.[19]

---

[16] *Id.* at ¶ 25, and generally, and Ex. B.
[17] Compl. at ¶ 26 (emphasis added).
[18] *Id.* at ¶¶ 25, 49, 50, 59, 60.
[19] *Id.* at ¶¶ 51-53, 60-62.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

**D.     Fulbright's Actual Knowledge, Including of the Surrounding Circumstances, During the First 16 Days of the Retention**

During the First 16 Days (the first 16 days of the Retention, through October 31, 2008), Fulbright knew the following in connection with its representation of the Palm Beach Funds:[20]

*First*, five days after Mr. Kelley was appointed receiver for certain of the Petters Entities in the Receivership Case, on Saturday, October 11, 2008, Mr. Kelley quickly filed bankruptcy petitions for PCI and a number of affiliates[21] primarily to preserve avoidance actions.[22]

*Second*, Lancelot was an investment fund similarly situated to the Palm Beach Funds as it (i) raised monies to invest with Petters; and (ii) was similarly financially devastated.[23] On October 20, 2008, four days after the Retention Date, Lancelot filed a chapter 7 petition.[24]

*Third*, PBF Offshore were offshore vehicles created to raise monies to lend to the Petters Entities *via* loans to PBF II. PBF Offshore were substantial creditors and affiliates of PBF II.[25] By October 31, 2008, PBF Offshore entered liquidation proceedings in the Cayman Islands.[26]

Moreover, during the First 16 Days, Fulbright internally considered whether the Palm Beach Funds should seek insolvency protection.[27] After all, Fulbright knew that the Palm Beach Funds were insolvent, and the victims of a massive *ponzi* scheme.[28] Indeed, per a memorandum dated October 20, 2008, Attorneys Bolton, Clement, D'Aquila and Kreps considered whether the Palm Beach Funds should be placed into receivership.[29]

---

[20] Id. at ¶¶ 30-35.
[21] *Id.* at ¶ 18.
[22] *Id.* at ¶ 19.
[23] *Id.* at ¶ 34.
[24] *Id.* at ¶ 35.
[25] *Id.* at ¶¶ 25(j), 32, 33.
[26] *Id.* at ¶¶ 32-33.
[27] *Id.* at ¶¶ 28.
[28] *Id.* at ¶ 39.
[29] *Id.* at ¶ 28.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

**E.    In the First 16 Days, Fulbright Failed to Properly Advise the Palm Beach Funds**

During the First 16 Days, Fulbright billed the Palm Beach Funds $209,720.50 for professional services.  Of that, Attorney Clement billed over 37 hours at $800 per hour and Attorney Bolton billed over 57 hours at $475 per hour.[30]

Notwithstanding all of Fulbright's knowledge, and that it internally considered this exact issue, Fulbright (including its bankruptcy specialists) never meaningfully advised the Palm Beach Funds to consider a bankruptcy filing as an option for themselves or explained the possible benefits or detriments of doing so.[31]  Moreover, Fulbright never advised the Palm Beach Funds to seek this advice from alternative counsel.[32]  It was *readily apparent* to Fulbright that this advice and counsel was necessary and appropriate and should have been provided to the Palm Beach Funds, and yet was not.[33]  Had this advice and counsel been properly provided, the Palm Beach Funds would have filed for bankruptcy protection.  Because Fulbright failed to provide such advice, the Palm Beach Funds did not file for bankruptcy and suffered damages.[34]

**F.    The Palm Beach Funds' Bankruptcy Filing and Fulbright's Claim**

On November 30, 2009, the Palm Beach Funds filed for bankruptcy protection.[35] Fulbright was scheduled as a holder of an unsecured claim for $750,000 in each of PBF and PBF II, based on its services as legal counsel.[36]

---

[30] *Id.* at ¶ 27.
[31] *Id.* at ¶¶ 40, 43.
[32] *Id.*
[33] *Id.* at ¶¶ 52, 61.
[34] *Id.* at ¶¶ 41-45.
[35] *Id.* at ¶ 42.
[36] *Id.* at ¶¶ 68, 69.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

# I.  ARGUMENT AND ANALYSIS.

**A.    This Court Has the Constitutional Authority to Hear this Action**

Relying on *Stern v. Marshall*,[37] Fulbright argues that this Court lacks constitutional authority to hear this Action.  This argument is a misapprehension of *Stern* along with the related statutory framework and should be rejected.

The U.S. Constitution provides that Congress is authorized to enact "uniform Laws on the subject of Bankruptcies throughout the United States."[38]  Per this authority, Congress enacted legislation providing district courts with original jurisdiction over all matters arising under, in, or related to the Bankruptcy Code.[39]  Districts courts may refer any matter arising under, in or related to a bankruptcy case to a bankruptcy court in such district.[40]  The law further provides that with respect to non-core claims that otherwise relate to a bankruptcy case, absent consent of the parties, the bankruptcy court must submit proposed findings of fact and conclusions of law to the district court, and the district court may then enter final orders or judgment.[41]

*Stern* does nothing to disturb this framework. [42]    Instead, *Stern* holds that bankruptcy courts lack constitutional authority to enter final judgments with respect to state law counterclaims that were statutorily deemed core matters under § 157(b)(2).  As this Court has recognized, *Stern* is narrowly tailored to its specific fact scenario; the decision itself so states.[43]

---

[37] 131 S.Ct. 2594 (2011).
[38] U.S. Const. art 1, § 8, cl. 4.
[39] 28 U.S.C. § 1334(b).
[40] 28 U.S.C. § 157(a).
[41] 28 U.S.C. § 157(c).
[42] *See generally In re Am. Housing Foundation*, 469 B.R. 257, 273 (Bankr. N.D.Tex. 2012) ("But, as also emphasized by the Supreme Court, *Stern*, except 'in one isolated respect,' is not meant to rejigger the division of labor that is allocated as between the district courts and the bankruptcy judges. It does not foreclose the ability of this Court to issue proposed findings of fact and conclusions of law subject to de novo review by the District Court, an Article III court.") (citing cases).
[43] *In re Custom Cont. LLC*, 462 B.R. 901, 906 (Bankr. S.D. Fla. 2011); *Stern*, 131 S.Ct. at 2620.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

Most importantly, *Stern* did not address, let alone hold, that a bankruptcy court lacked constitutional authority to enter final judgments in non-core matters that are otherwise related to a bankruptcy case. The reason is simple: pre and post-*Stern*, it is a truism that bankruptcy courts cannot do so absent consent of the parties. Instead, the bankruptcy court must follow § 157(c)(1), *i.e.*, submit proposed findings of fact and conclusions of law to the district court, with the district court thereafter entering a final order or judgment. Applied here, if Fulbright does not consent to this Court entering final orders or judgment on the Plaintiff's non-core related to tort claims, it may follow the appropriate procedures.

Finally, Fulbright's argument in favor of dismissal is not advanced because it did not file a proof of claim in this case, does not consent to the jurisdiction of this Court to enter final orders or judgment or demands a jury trial.[44] Although these issues may be relevant to whether Fulbright submitted itself to the equitable jurisdiction of the Court,[45] they are of no legal moment on whether the Court has the constitutional authority to hear this matter in conformity with the procedure outlined under § 157(c) or the standing order of referral of bankruptcy matters.[46] This Court has constitutional authority to hear this matter.

---

[44] In the middle of its Motion to Dismiss, pg. 7, Fulbright seems to assert a jury trial demand.

[45] In an abundance of caution, the Liquidating Trustee states its opposition to Fulbright's position. Fulbright has submitted itself to the Court's equitable jurisdiction by, among other things, its participation in this Bankruptcy Case; Fulbright voted in favor of the Plan in both Bankruptcy Cases. [ECF Nos. 314, 385]. *See, e.g., In re Mako, Inc.*, 116 B.R. 280 (Bankr. E.D. Okla. 1990); *In re American Expressways*, 161 B.R. 707 (Bankr. D. Utah 1993); *see also In re Atlantic Computer Systems, Inc.*, 165 B.R. 781 (Bankr. S.D.N.Y. 1994); *In re Metro. Plant & Flower, Inc.*, 1997 WL 638454, *4 (N.D. Ill. Sept. 30, 1997).

[46] U.S. District Court Administrative Order 2012-25.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

**B.      This Court has 'Related-To' Jurisdiction Over this Action**

Fulbright asserts that this Court should adopt the 'close nexus' test of *In re Resorts Int'l, Inc.*,[47] and find that this Court lacks 'related-to' jurisdiction.  This argument should be rejected for numerous reasons.  This Court has 'related-to' jurisdiction over this Action.

>  1.     If this Action Had Been Asserted Pre-Confirmation, this Court Would Have Jurisdiction

If this Action was brought by a trustee pre-confirmation, this Court would clearly have 'related-to' jurisdiction as a successful result would bring monies into the estate:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

> The key word in the *Lemco Gypsum/Pacor* test is 'conceivable,' which makes the jurisdictional grant extremely broad.  If the resolution of a dispute could conceivably have an impact on the amount of money available for distribution in the bankruptcy estate, the bankruptcy court has subject matter jurisdiction over that dispute.

> ***In the present case, if the Trustee is successful more money will be included in the estate and be available for distribution to creditors. Potential augmentation of the estate is sufficient to establish "related to" jurisdiction. The Court has subject matter jurisdiction over this adversary proceeding.***[48]

>  2.     The Bankruptcy Court Has Jurisdiction Over this Action Post-Confirmation

>>  a)     The Bankruptcy Court Expressly Retained Jurisdiction to Hear These Claims Pursuant to the Plan and Fulbright Voted in Support of the Plan

---

[47] 372 F.3d 154 (3d Cir. 2004).

[48] *In re Phoenix Div. Inv. Corp.*, 439 B.R. 231, 238 (Bankr. S.D. Fla. 2010) (internal citations, notations and quotations omitted, emphasis added); *see also In re First NLC Fin. Services, LLC*, 410 B.R. 726, 731-32 (Bankr. S.D. Fla. 2008).

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

On October 21, 2010, this Court entered its Order [ECF No. 444] confirming the Second

Amended Joint Plan of Liquidation [ECF No. 245] (the "**Plan**").  Per Article 12, § 12.1.2 entitled

"Retention of Jurisdiction", the Bankruptcy Court retains post-confirmation jurisdiction to:

> Hear and determine any and all causes of action and rights of the Debtors that
> arose before or after the Petition Date that are expressly preserved pursuant to,
> among other things, section 1123(b)(3) of the Bankruptcy Code, are yet to be
> liquidated and are preserved for prosecution by the Liquidating Trustee or other
> appropriate party in interest, including any designee or successor, against any
> Person whatsoever (including, but not limited to, those parties listed on Schedule
> 1.52 hereto), on account of any and all Litigation Claims defined in Section 1.52
> herein … .

Schedule 1.52 of the Plan, entitled "Potential Targets of Litigation Claims to be Pursued by the

Liquidating Trustee," identifies Fulbright as a potential litigation target.[49]  Further, Fulbright

submitted ballots voting its scheduled claims in favor of the Plan (including Article 12) in both

bankruptcy cases.[50]  Fulbright should not be permitted now to argue to the contrary.

> b)    Numerous Courts Have Retained Jurisdiction Post-Confirmation Through
>        Liquidating Trusts to Hear Actions Previously Belonging to the Debtor

A trustee's appointment on behalf of a liquidating trust to pursue actions for the benefit

of creditors has been utilized in numerous circumstances and is neither novel nor unusual.[51]

> c)    The 'Conceivable Effect' Test Governs Post-Confirmation

11 U.S.C. § 1334 makes no distinction between pre- and post-confirmation jurisdiction;[52]

accordingly, the 'conceivable effect' test set forth above remains applicable, and Fulbright's

arguments should be summarily rejected.  In *Sirius*, the liquidating trustee of a post-confirmation

liquidating trust, created pursuant to a plan of liquidation, brought an action against a defendant

---

[49] [ECF No. 245-1, pg. 34].
[50] [ECF Nos. 314, 385].
[51] *See In re Overs't & Cont. Comm'n of Avanzit, S.A.*, 385 B.R. 525, 535-36 (Bankr. S.D.N.Y. 2008) (citing and describing cases).
[52] *McKinstry v. Sergent*, 442 B.R. 567, 575 (E.D. Ky. 2011) (*citing In re Boston Reg'l Med. Ctr., Inc.*, 410 F.3d 100, 106 (1st Cir. 2005)).

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

related to pre-petition acts that caused the debtor's financial collapse.[53]  The defendant moved to dismiss on jurisdictional grounds.  The district court rejected the defendant's argument, affirming the bankruptcy court decision and finding 'related-to' jurisdiction based on the 'conceivable effect' test.[54]  The *Sirius* court also noted that the liquidating plan provided bankruptcy with post-confirmation jurisdiction.

So too here.  Applying the 'conceivable effect' test post-confirmation, a successful resolution of this Action would bring money into the estate for the benefit of creditors.  Further, just as *Sirius* looked to the liquidating plan for the retention of post-confirmation jurisdiction, so should this Court.  Not only has this Court retained jurisdiction per the Plan, but Fulbright was specifically identified as a litigation target and voted in favor of the Plan.[55]

3.    Even if this Court Did Adopt the 'Close Nexus' Test, It is Satisfied Here

a)    The Motion to Dismiss Misrepresents the *Resorts* Decision

In the Motion to Dismiss, Fulbright asserts:

In the leading case on related-to jurisdiction, the Third Circuit reviewed a claim, similar to the one alleged here, for professional malpractice against a defendant accounting firm and held that post-confirmation, the "essential inquiry" is "whether there is a close nexus to the bankruptcy plan or proceeding sufficient to

---

[53] *Sirius Computer Solutions, Inc. v. AASI Creditor Liq. Trust*, 2011 WL 3843943, at *1 (S.D. Fla. Aug. 29, 2011).

[54] *Id.* at *3.

[55] Other courts, such as in *Whyte v. PricewaterhouseCoopers LLP*, 2011 WL 1104527 (N.D. Okla. Mar. 22, 2011), have utilized the 'conceivable effect' test, yet taken into account the post-confirmation procedural stage.  This Court would still have jurisdiction under the *Whyte* test of whether (i) the plan preserves jurisdiction; (ii) the person seeking to enforce the claim must be the appointed representative of the estate and taking action to benefit the unsecured creditors; and (iii) the claim must have belong to the debtor pre-confirmation.  Possibly even more persuasive is *In re Coho Energy, Inc.*, 309 B.R. 217 (Bankr. N.D. Tex. 2004), where Fulbright - - the instant Defendant - - (seemingly) represented as counsel the post-confirmation plaintiff acting on behalf of a liquidating trust created pursuant to a plan of liquidation, Fulbright, on behalf of the plaintiff, asserted that because (i) the claims asserted arose pre-petition; (ii) the plan retained jurisdiction; and (ii) recovery would be distributed to creditors, the bankruptcy court had post-confirmation subject matter jurisdiction to hear the dispute.  The bankruptcy court agreed with Fulbright and its client, and held that it had subject matter jurisdiction, post-confirmation.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

uphold bankruptcy court jurisdiction over the matter." *Binder v. Price Waterhouse & Co. (In re Resorts, Int'l, Inc.)*, 372 F.3d 154, 166-167 (3d Cir. 2004); *see also 1 Collier on Bankruptcy*, ¶3.02(7) (16ᵗʰ ed.). Such a "close nexus" exists only where the claims "affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan." *Resorts*, 372 F.3d at 167.[56]

*First*, *Resorts* is not the "leading case." In fact, its application has been narrowly applied and interpreted.[57] In fact, on August 29, 2011, the *Sirius* court explicitly noted that the Eleventh Circuit has neither adopted the *Resorts* test, nor any other test, for post-confirmation jurisdiction.[58] Upon diligent research, that remains true today.

*Second*, Fulbright's statement that a "'close nexus' exists **only where** the claims 'affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan,'" is an inaccurate representation of *Resorts*.[59] The complete quote is as follows:

> To a certain extent, litigation trusts by their nature maintain a connection to the bankruptcy even after the plan has been confirmed. The question is how close a connection warrants post-confirmation bankruptcy jurisdiction. Matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus. Under those circumstances, bankruptcy court jurisdiction would not raise the specter of "unending jurisdiction" over continuing trusts.[60]

      b)      Even if This Court Adopts the *Resorts* 'Close Nexus' Test, This Court Still Has Post-Confirmation Jurisdiction Over this Action

Even if this Court adopts the 'close nexus' test, it is satisfied. In *Sirius*, after applying the 'conceivable effect' test, the court found (in the alternative) that even if *Resorts* did apply, the bankruptcy court would still have jurisdiction.[61] District Judge Moreno reasoned that the action had a 'close nexus' to the bankruptcy plan and proceeding because (i) the claims affected the

---

[56] Motion to Dismiss, pg. 9.
[57] *See e.g., McKinstry v. Sergent*, 442 B.R. 567 (E.D. Ky. 2011) (citing and describing cases).
[58] *Sirius Computer Solutions, Inc.*, 2011 WL 3843943 at *3 n. 2.
[59] Motion to Dismiss, pg. 9 (emphasis added as to "***only where***").
[60] *Resorts*, 372 F.3d at 167.
[61] 2011 WL 3843943, at *3 n.2.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

execution and administration of the liquidating plan; and (ii) the claims were identified in the order confirming the liquidating plan.

So too here. The Action affects the execution and administration of the Plan; indeed, the Plan's primary purpose is to provide a mechanism to liquidate third-party claims and thereafter to distribute monies to creditors.[62] Further, the Plan both expressly identified Fulbright as a possible litigation target and contemplated this Court retaining jurisdiction over such a claim. Accordingly, the identical conclusion is appropriate and this Court has 'related to' jurisdiction.

Similarly, the *McKinstry* district court, also applying the 'close nexus' test in the alternative, found that 'related to' jurisdiction would still exist under its facts. That court found:

> In *Resorts International*, the trust sought to enforce claims that belonged to it personally—*a malpractice claim against an accounting firm it hired for post-confirmation conduct while serving the trust*. 372 F.3d at 157–58. Here, in contrast, the claims relate to pre-confirmation—even pre-petition—conduct, and the trust asserts these claims on behalf of the unsecured creditors, not itself. Indeed, the claims against the A & M defendants were specifically assigned to the trust under the settlement agreement and confirmed plan.
>
> And yet even if related-to claims can only share a "close nexus" with bankruptcy proceedings if they involve interpretation, implementation, consummation, execution, or administration of the confirmed plan, the plaintiff's claims here would qualify. *The trust is asserting claims that do not belong to it personally but were transferred to it as part of the bankruptcy plan - and so "the 'implementation' and 'execution' of the confirmed Plan are directly at issue."* In re Refco, Inc. Secs. Litig., 628 F.Supp.2d 432, 443 (S.D.N.Y. 2008). … No matter how you slice it, then, this matter is "related to" a case arising under Title 11.[63]

So too here. The Action belonged to the pre-petition debtors and was transferred to the liquidating trust under the Plan; thus, even under *Resorts*, the Action relates to "implementation," "execution," and "administration" of the Plan, and there is 'related to' jurisdiction.

---

[62] Plan, pg. 7 of 62, §1.52, Article 12.
[63] *McKinstry*, 442 B.R. at 576 (emphasis added).

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

**C.     The Liquidating Trustee Has Stated a Claim Against Fulbright**

   1.     The Pleading Standard

   In the interests of brevity, the Liquidating Trustee omits the oft repeated standard for a

*Fed. R. Civ. P.* 12(b)(6) motion to dismiss and the applicable pleading standard under *Fed. R.*

*Civ. P.* 8(a).[64]   The Liquidating Trustee states only that a relaxed standard (even more than

otherwise appropriate) should be employed, as the plaintiff is a bankruptcy trustee.[65]

   2.     Applicable Law

   Counts I for professional malpractice and Count II for breach of fiduciary duty are state

law claims.   There is an open issue as to applicable law, as Florida, Minnesota or Texas law

could conceivably apply.[66]   Under Florida conflict of law rules, the state with the most

"significant relationship" to the action supplies the governing law.[67]   Nonetheless, respectfully, it

is premature for this Court to perform a fact intensive conflict-of-law analysis at this (motion to

dismiss) stage, as discovery has not begun.[68]   Thus, if the Complaint properly alleges a claim

under *any* potentially applicable state's law, the Motion to Dismiss should be denied.[69]

---

[64] *In re Ginn-La St. Lucie Ltd., LLLP*, 2010 WL 8756756 (Bankr. S.D. Fla. Dec. 10, 2010) (citing cases).

[65] *In re Motorwerks, Inc.*, 371 B.R. 281, 294 (Bankr. S.D. Ohio 2007).

[66] The Palm Beach Funds were based in, and suffered the damages in, Florida.  Fulbright also met with the Palm Beach Funds in Florida.  Fulbright did much of its professional work out of Minnesota, and worked, in part, out of that office.  The Retention Agreement was executed by Fulbright out of Texas, and attached to it is the *"The Texas Lawyers' Creed."*  Therefore, prior to discovery, this fact-specific determination cannot be made.

[67] *Grupo Televisa, S.A. v. Telemundo Comm. Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007).

[68] *Court-Appointed Receiver ex rel lancer Mgmt. Grp., LLC v. Taubman*, 2007 WL 984452, at *2 (S.D.Fla. Mar. 27, 2007) ("[i]t is premature to undertake a conflict of laws analysis at this stage of the proceeding", *i.e.*, on a motion to dismiss); *Rios v. State Farm Fire & Cas. Co.*, 469 F.Supp.2d 727, 741 (S.D. Iowa 2007); *Broin & Assoc., Inc. v. Genecor Int'l, Inc.*, 232 F.R.D. 335, 339 (D.S.D. 2005) *see also* [ECF Nos. 3, 7 (discovery has not yet commenced)].

[69] *Miller v. Dir., Middletown State Hosp., Middletown, N. Y.*, 146 F. Supp. 674, 677 (S.D.N.Y. 1956) *aff'd*, 243 F.2d 527 (2d Cir. 1957) ("[If plaintiff's] allegations stated a valid claim under any applicable law the motion to dismiss must be denied."); *see also Calkins v. Dollarland, Inc.*, 117 F. Supp. 2d 421, 429-30 (D.N.J. 2000).

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

3.    Counts I and II Properly Allege Claims for Professional Malpractice and Breach of Fiduciary Duty

Counts I and II of the Complaint assert claims against Fulbright for professional negligence and breach of a fiduciary duty due to Fulbright's failure to advise the Palm Beach Funds to consider filing for bankruptcy, or to seek this advice from alternate counsel. Although similar,[70] professional negligence and breach of fiduciary duties are alternative theories of legal malpractice that constitute distinct wrongs:

> An attorney's reasonable duties include the duty of care, which requires an attorney to have the knowledge and skill necessary to confront the circumstances of each case. In addition, 'the attorney is under a duty at all times to represent his client and handle his client's affairs with the utmost degree of honesty, forthrightness, loyalty and fidelity.'[71]

A claim for negligence is based on a breach of an attorney's duty of care, while a claim for breach of fiduciary duty is based on a breach of the duty of loyalty.[72]

A claim for professional negligence has three elements: (1) the attorney's employment; (2) the attorney's neglect of a reasonable duty; and (3) the attorney's negligence was the proximate cause of loss to the client.[73]  Once the attorney-client relationship is established, a lawyer owes her client an obligation to use utmost good faith in all dealings with the client.[74]

"The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty and the breach of that duty such that it is the proximate cause of the plaintiff's damages."[75]

---

[70] *Club Vista Fin. Services, L.L.C. v. Maslon, Edelman, Borman & Brand, LLP*, 2011 WL 4947629, at *14 (D. Minn. Oct. 18, 2011).
[71] *Resolution Trust Corp. v. Holland & Knight,* 832 F.Supp. 1528, 1530–31 (S.D. Fla.1993) (internal citations omitted).
[72] *Id.* at 1531–32.
[73] *Law Office of David J. Stern, P.A. v. Security Nat'l Servicing Corp.*, 969 So. 2d 962 (Fla. 2007); *In re Witko*, 374 F.3d 1040, 1043-44 (11th Cir. 2004).
[74] *Yaklin v. Glusing, Sharpe & Krueger*, 875 S.W.2d 380, 383 (Tex. App 1994).
[75] *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002). *See also ACCAP-HUD Homes Tax Credit Ltd. P'ship v. Minn. Counties Intergovernmental Trust*, No. A12-0864, 2012 WL 5834560, at *4 (Minn.

Here, the Palm Beach Funds and Fulbright entered into an attorney-client relationship; therefore, Fulbright owed the Palm Beach Funds a fiduciary duty.[76]  As a fiduciary, Fulbright owed the Palm Beach Funds "the highest obligation of good faith, loyalty, fidelity, fair dealing, and full disclosure of material matters affecting the client's interests."[77]

> a)   Fulbright is Held to a Higher Standard, as it is a Bankruptcy Specialist

An attorney generally fulfills her duty to a client by performing the legal services for which they have been engaged with such skill, prudence and diligence as lawyers of ordinary skill and capacity commonly possess.[78]  However, if the attorney is a specialist, she must meet the standards of knowledge and skill of a specialist, and as a ***reasonably prudent expert attorney in that field***.[79]  Fulbright should be held to this higher standard of care.  Fulbright represented to the Palm Beach Funds that it had specialized expertise in bankruptcy matters, which it did, and the Palm Beach Funds relied on these representations in selecting and retaining Fulbright.  Fulbright staffed the engagement with bankruptcy specialists, including one who 'spearheaded' the engagement and a second who was a board-certified bankruptcy attorney.

> b)   Fulbright's Professional Duties and Requisite Services Was Not Limited to the Scope Set Forth in the Retention Agreement, and Included 'Readily Apparent' Items

---

App. Nov. 19, 2012) ("[A] plaintiff alleging breach of fiduciary duty must demonstrate the existence of a fiduciary duty, a breach of that duty, causation, and damages.").

[76] *FDIC v. Martin*, 801 F.Supp. 617, 620 (M.D. Fla. 1992); *Rice v. Perl*, 320 N.W.2d 407 (Minn.1982).

[77] *Commercial Assocs., Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 779 (Minn. App. 2006) (emphasis added) (internal citations omitted).

[78] *See, Rhodes v. Batilla*, 848 S.W.2d 833, 843 (Tex. App. 1993).

[79] *See Rhodes*, 848 S.W.2d at 843 (emphasis added); *see also* Judge Kevin S. Burke (Minn. 4th Jud. Dist.) & Sudha Rajan, *Attorney Specialization: Good for the Attorney, the Profession, and the Public, Bench and Bar of Minnesota* (Mar. 2012) ("Heightened standards are applied to attorneys who hold themselves out as experts even if they are not certified, and an attorney does not per se have to be a certified specialist to be held to a higher standard of care."); Daniel K. Bean, *The Florida Bar: Professional Liability of Lawyers, Pleading and Practice*, 4-1 (2006) ("With respect to the standard of care to be applied to an attorney specializing in a particular area of law, case law suggests that a higher standard of care is required."); Restatement (Second) of Torts § 299A (1965), comment d.

Fulbright asserts that since bankruptcy counseling was not expressly included in the Retention Agreement, it had no duty to provide such advice. This is incorrect.

An attorney's obligation to a client is not necessarily limited to a retention agreement; she is required to alert the client to collateral matters, or at least the need for representation on collateral matters, where she becomes aware that it is in her client's best interests.[80]

> As the defendants point out, the scope of an attorney's duty will turn on the parameters of the agreed representation. *Nevertheless, an attorney may still have a duty to alert clients to legal problems that are* <u>*reasonably apparent*</u>*, even when they fall outside the scope of the retention. This makes sense because a skilled attorney is substantially more qualified to recognize potential legal problems than the typical client would be.* For that reason, in *Nichols*, the court concluded that attorneys should be prepared to volunteer legal opinions when necessary to further a client's objectives and should provide advice regarding alternatives where the failure to consider them could result in adverse consequences.[81]

Florida courts have adopted this reasoning. In *McCarty v. Browning*, the Florida appellate court recognized that "*an attorney has a duty to advise the client of legal problems not within the scope of the task the attorney was retained to perform, but of which the attorney becomes aware.*"[82] *McCarty* in turn cited to *Maillard v. Dowdell*,[83] which cited approvingly to *Daughtery v. Runner*; *Daughtery* noted the difficulties faced by:

---

[80] *See e.g., Greenwich v. Markhoff*, 650 N.Y.S.2d 704 (1996) ("*The extent of the firm's duty to represent their client's interest is not limited by the scope of their retainer agreement.* The possibility that an action for personal injury may lie against a contractor or the owner of the premises *is a reasonably apparent legal matter* of which an attorney might be expected to apprise a client") (emphasis added); *Ito v. Brighton/Shaw, Inc.*, 2008 WL 3378120, at *8 (E.D. Cal. Aug. 8, 2008) (citing cases) ("*An attorney may still have a duty to alert the client to legal problems if they are reasonably apparent, as they were in this case, even though they fall outside the scope of the retention.*") (emphasis added); *In re JTS Corp.*, 305 B.R. 529, 551-52 (Bankr. N.D. Cal. 2003); *Daugherty v. Runner*, 581 S.W.2d 12 (Ky. Ct. App. 1978).
[81] *JTS Corp.*, 305 B.R. at 551-52 (emphasis added).
[82] 797 So. 2d 30 (Fla. 3d DCA 2001) (emphasis added). Although in *McCarty* the court found the defendant not liable, it was because the defendant lacked knowledge of the situation. Here, Fulbright knew of the issues facing the Palm Beach Funds and they needed this advice.
[83] 528 So. 2d 512 (Fla 3rd DCA 1988).

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

the client, presumably a layman who is unskilled in the law, to recognize for himself all potential legal remedies. *An attorney cannot completely disregard matters coming to his attention which should reasonably put him on notice that his client may have legal problems or remedies that are not precisely or totally within the scope of the task being performed by the attorney.*[84]

Similarly, in *Atkin v. Tittle & Tittle*, the Florida appellate court held that a lawyer "*may not disregard matters that arise and reasonably signal potential legal problems.*"[85] In *Atkin*, the clients hired legal counsel to represent them in the purchase of a lot on which they intended to build a home. The transaction closed, but the clients' building permit application was denied because of a zoning provision.[86] Although the retention agreement did not contemplate investigation of zoning issues, the *Atkin* court held that "[a]n attorney may not neglect to perform the services which he agrees to perform or which by implication he agrees to perform when he accepts employment."[87] The Florida court further found that the lawyer "*undertook an inquiry*" into the zoning issue, which expanded her duty.

Fulbright was a 'bankruptcy specialist' and a fiduciary,[88] and through its efforts over the First 16 Days in which it billed more than $200,000, knew that the Palm Beach Funds should have considered whether a bankruptcy filing was in their best interests. Fulbright (i) knew the Palm Beach Funds were insolvent, and had been financially devastated by a fraudulent scheme; (ii) internally considered whether the Palm Beach Funds should seek insolvency protection; and

---

[84] 581 S.W.2d 12, 17 (Ky. App. 1978) (emphasis added).

[85] 730 So. 2d 376, 378 (Fla. 3d DCA 1999) (emphasis in original).

[86] *Id.* at 377.

[87] *Id.* at 378 quoting *Dykema v. Godfrey*, 467 So. 2d 824, 825 (Fla. 1st DCA 1985)).

[88] As stated above, a fiduciary has the similar obligation of full disclosure. *JDI Holdings*, 732 F. Supp. 2d at 1231; *First Union Nat. Bank v. Turney*, 824 So. 2d 172, 188 (Fla. 1st DCA 2001); *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1315 (11th Cir. 2006) ("Fiduciaries have an unflagging duty of loyalty to the beneficiaries whom they serve, and to avoid conflicts of interest."); *Bright v. Addison*, 171 S.W.3d 588, 597 (Tex. App. 2005); ("The relationship existing between attorney and client is characterized as "highly fiduciary," and requires proof of "perfect fairness" on the part of the attorney. As appellees' attorney, Bright owed them the duty of full disclosure.") (internal citations omitted).

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

(iii) knew that affiliated and similarly situated entities were filing for bankruptcy / insolvency protection, including to preserve avoidance actions. On Sunday October 19, 2008, Fulbright successfully urged Mr. Kelley to place a PCI non-debtor affiliate into bankruptcy.[89] Fulbright's duties are clear, as it knew that the advice was needed and assumed a duty by, among other things, undertaking an internal inquiry into the issue. This issue was 'readily apparent' to Fulbright, and Fulbright had both a professional negligence and fiduciary duty to provide this advice, notwithstanding the language of the Retention Agreement. Moreover, Fulbright failed to advise that alternative counsel be retained. Indeed, as a fiduciary, Fulbright failed to comply with its duty of full disclosure.

Fulbright breached its duties by failing to timely and adequately communicate that the commencement of a bankruptcy proceeding would be a meaningful option to the Palm Beach Funds, or that the Palm Beach Funds should seek other counsel to discuss these options.[90] Had the Palm Beach Funds been so advised, they would have filed for bankruptcy.[91] Instead, the Palm Beach Funds did not file until more than one year after Fulbright's retention, causing them damages through the loss of avoidance actions (among other things including § 502(d) rights).[92]

      c)    Fulbright Breached Its Duty of Loyalty

In the Motion to Dismiss, Fulbright fails to address that Fulbright had conflicting loyalties, between the Palm Beach Funds (its client) and the limited partners of the Funds (non-clients, with whom Fulbright regularly interacted and communicated), and that it should have advised *its client* - - the Palm Beach Funds - - to consider bankruptcy as an option without regard

---

[89] Compl. ¶¶ 36-38.
[90] Compl. ¶¶ 29, 40-45, 55, 64.
[91] *Id.* ¶ 41.
[92] *Id.* ¶ 42-44.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

to its non-client's financial interests or advise that alternate counsel should be obtained.[93]  This was a clear breach of Fulbright's duty of loyalty, as a part of its fiduciary duties.

d)    Each of Fulbright's Arguments Should be Rejected

*First*, Fulbright argues that the Liquidating Trustee did not allege a duty by Fulbright to advise the Palm Beach Funds as to insolvency protection.[94]  This is inaccurate.  Fulbright's expanded duty, exceeding the Retention Agreement's limited language, is the general theme of the entire Complaint, and the allegations are set forth in, among other places, ¶¶ 52-54 and ¶¶ 61-64.  If Fulbright is seeking certain 'magic words,' that is simply not necessary.[95]

*Second*, Fulbright insists that the attorney-client relationship must have existed with respect to the acts or omissions upon which the claim is based, which is prevented by the Retention Agreement.[96]  This argument should be rejected, as it is a misapprehension and misapplication of the facts.  The Retention Agreement was agreed to by the parties, but Fulbright did not comply with its limitations; Fulbright's Actual Scope of Services for the Palm Beach Funds included those that were (i) outside of the scope of the agreement; and (ii) contrary to the express preclusions contained in the agreement.  Fulbright's course of conduct prevents it from attempting to bar a claim on this basis.[97]  Further, Fulbright was actually aware, and it was readily apparent to it, that the Palm Beach Funds required advice and counsel regarding whether they needed to consider a bankruptcy filing.  As this advice was not provided (nor a

---

[93] *Id.* at ¶64.
[94] Motion to Dismiss, pg. 14-15.
[95] *Huntington Op. Corp. v. Sybonney Exp., Inc.*, 2009 WL 2423811, at *3 (S.D. Tex. Aug. 3, 2009); *Romine v. Acxiom Corp.*, 296 F.3d 701, 710 (8th Cir. 2002).
[96] Motion to Dismiss, pg. 15-16.
[97] *Nat'l Credit Union Admin. Board v. Stone*, 1994 WL 175044, *2 (April 21, 1994) ("A formal … retainer agreement is not required to impose a duty; ***the parties conduct governs the existence and scope of an attorney-client relationship***.  If reasonable persons could differ regarding the attorney-client relationship, the issue must be resolved by the fact finder.") (internal citations omitted, emphasis added).

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

recommendation to seek alternative counsel), Fulbright breached its duties to the Palm Beach Funds.

*Third*, Fulbright argues that the Liquidating Trustee is trying to retroactively expand the scope of services for which Fulbright was retained.[98] Again, this is incorrect. Fulbright and the Palm Beach Funds contracted for certain services; yet, Fulbright's Actual Scope of Services far exceeded, and indeed contradicted, this limited scope. Moreover, as stated above, Fulbright's fiduciary and professional duties arose from the fact that Fulbright (i) was the Palm Beach Funds' attorney and fiduciary; (ii) exceeded (and contradicted) the limited, written scope of retention through the Actual Scope of Services; and (iii) knew, and it was readily apparent to it, that the Palm Beach Funds required advice and counsel regarding whether they needed to consider a bankruptcy filing, and that they depended on Fulbright for this advice.

*Fourth,* Fulbright argues that the Liquidating Trustee's allegation that bankruptcy specialist Attorney Bolton queried to (among others) bankruptcy specialist Attorney Clement, in the October 20th memorandum, *"[w]hether the Funds should be put into receivership,"* is insufficient to give rise to a duty because a 'bankruptcy' is different than a 'receivership.'[99] This argument should be rejected. The Liquidating Trustee's allegations include that:

> During the First 16 Days, Fulbright internally considered whether the Palm Beach Funds should seek insolvency protection.[100]

The Complaint then continues with the October 20th memorandum, but the above factual allegation is clear, and should be taken as true at this stage of the proceeding. Fulbright's mischaracterization by limiting the allegation to that relating to a 'receivership,' which it distinguishes from a 'bankruptcy,' is inappropriate and wrong.

---

[98] Motion to Dismiss, pg. 16-17.
[99] Motion to Dismiss, pg. 17-18.
[100] Compl. ¶ 28.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

*Fifth*, Fulbright makes repeated reference to the Palm Beach Funds' retention of a separate law firm (Berger Singerman which was retained nine months later by the Debtors) to handle bankruptcy services,[101] and therefore, appears to argue it is relieved of its liability. This argument should be rejected. To begin with, there are no such allegations in the Complaint; thus, this falls outside the appropriate scope of a 12(b)(6) motion.[102] Additionally, the time of the alleged negligent act or omission is the critical point for testing the scope and existence of the attorney-client relationship.[103] Fulbright's wrongdoing (failure to advise) occurred by the close of the First 16 Days, if not soon thereafter. Accordingly, it is of no legal moment whether the Palm Beach Funds retained another law firm at a later point in time.[104] And finally, an attorney's reliance on another attorney's retention by, or advice to, a client does not necessarily relieve the first attorney from liability for wrongdoing.[105] At most, this is a fact issue to be dealt with in discovery, and certainly not to be decided at this procedural stage.[106]

## D.    Count III Properly Objects to Fulbright's Claims

In Count III, the Liquidating Trustee objects to the Fulbright Claims, since they are based upon legal fees for services performed by Fulbright to the Palm Beach Funds during the Retention.[107] Because Fulbright committed malpractice and breached its fiduciary duty to the Palm Beach Funds during the Retention, Fulbright's right to these fees has been forfeited and the

---

[101] Motion to Dismiss, pg.s 1, 2, 3, 4, 15.

[102] *In re Reliance Fin. & Inv. Group, Inc.*, 2006 WL 3663243, at *3 (S.D. Fla. 2006).

[103] *Law Office of David J. Stern, P.A. v. Security Nat'l Serv. Corp.*, 969 So. 2d 962 (Fla. 2007).

[104] Fulbright's Motion to Dismiss states that the "[o]n December 17, 2008, the Committee controlling the Funds voted to hire another firm as bankruptcy counsel ...". This is outside (i) the four corners of the Complaint; and (ii) the First 16 Days (ending on October 31, 2008). Moreover, Fulbright is incorrect on the pertinent dates (*see* the discussion at footnote 7 herein).

[105] *Spaziano v. Price*, 763 So. 2d 1047, 1049 (Fla. 4th DCA 1999); *Greene v. Leasing Associates, Inc.*, 935 So. 2d 21, 26 (Fla. 4th DCA 2006); *see also Daugherty*, 581 S.W. 2d at 20.

[106] *Mansur v. Podhurst Orseck, P.A.*, 994 So. 2d 435, 439 (Fla. 3d DCA 2008); *Daneshjou v. Bateman*, 2013 WL 178135, at *3 n.5 (Tex. App. 2013); *Katz v. Paul, Hastings, Janofsky & Walker LLP*, 862 N.Y.S.2d 815, at *2 (N.Y. Sup. Ct. Apr. 3, 2008).

[107] Compl. ¶ 69.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

claims should be disallowed per 11 U.S.C § 502(b).[108]  Fulbright makes separate substantive and procedural arguments as to why Count III should be dismissed, neither of which have merit.

Substantively, fees owed to an attorney are forfeited where the attorney breached her fiduciary duties or committed other wrongs upon her client.[109]  As set forth above, the Liquidating Trustee has asserted viable claims against Fulbright for malpractice and breach of fiduciary duty, and therefore Count III should similarly survive the Motion to Dismiss.

Procedurally, Fulbright argues that Count III should not be included in this adversary proceeding, but rather as an objection filed in the main bankruptcy proceeding.[110]  This argument should be rejected.  Count III is directly related to Counts I and II; only if negligence or breach of fiduciary duty is demonstrated would the objection to claim survive.  Litigating these matters separately would be wholly inefficient.[111]

Moreover, the Liquidating Trustee is expressly permitted to move forward in this manner. *Fed. R. Bankr P.* 3007(b) approves this procedure, stating that "[i]f an objection to a proof of

---

[108] *Id.* at ¶¶ 70-73.
[109] *See Perl v. St. Paul Fire & Marine Ins. Co.*, 345 N.W.2d 209, 215 (Minn. 1984) ("***The professional conduct of attorneys has always been a matter of prime public policy concern to this court. Thus it is a basic rule that an attorney must represent the client with undivided loyalty and must disclose to the client any material matter which might impair that loyalty or affect the client's interests. For breach of this duty, the attorney forfeits his or her right to compensation***.") (emphasis added, internal notations omitted); *see generally JDI Holdings, LLC v. Jet Mgmt., Inc.*, 732 F. Supp. 2d 1205, 1231 (N.D. Fla. 2010); *White v. Roundtree Transp., Inc.*, 386 So. 2d 1287, 1289 (Fla. 3d DCA 1980); *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Scheller*, 629 So. 2d 947 (Fla. 4th DCA 1993); *In re Marriage of Kantar*, 220 Ill. App. 3d 323, 331 (Ill. App. Ct. 1991).
[110] Motion to Dismiss, pg. 19.
[111] Further, Fulbright's argument that Count III has been inserted to manufacture jurisdiction is simply incorrect, as jurisdiction exists independently of this objection to claim and the relief sought is necessary and appropriate given the Schedules prepared by the Debtors prior to the Liquidating Trustee's appointment.

claim is joined with a demand for relief specified in Rule 7001, the objection to the proof of claim becomes an adversary proceeding."[112]

## OBJECTION TO RESERVATION OF RIGHTS

Fulbright includes a 'reservation of rights' section in the Motion to Dismiss, purportedly reserving any and all rights to assert "at any time and in any subsequent proceeding, any and all defenses" under *Fed. R. Civ. P.* 12.[113]   The Liquidating Trustee opposes and objects to this 'reservation.'   The Rules are clear, that "[a]ccording to Rule 12(g), once a party has chosen to make a Rule 12(b) motion, any available Rule 12(b) defenses must be joined in that motion or those that are omitted will be waived."[114]   Rule 12(g) includes exceptions, but its language is unambiguous and strict application should be enforced.[115]   Respectfully, Fulbright's 'reservation of rights' section should be given neither force nor effect.

## CONCLUSION

This Court has constitutional authority to hear this Action, and the U.S. Supreme Court's decision in *Stern* did nothing to change that.   This Court has 'related-to' jurisdiction over this Action, based on the post-confirmation application of the 'conceivable effect' test, and the Plan, for which Fulbright voted in favor.   The application of *Resorts* and the 'close-nexus' test are either inapplicable or have been satisfied.

---

[112] Fed. R. Bankr. P. 3007(b); *see also In re Moi*, 381 B.R. 770, 772 (Bankr. S.D. Cal. 2008); *In re Lexington Healthcare Group, Inc.*, 339 B.R. 570, 578 (Bankr. D. Del. 2006).
[113] Motion to Dismiss, pg. 20.
[114] Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1361 (3d ed.); *see also Fed. R. Bankr. P.* 7012(g)(2); *see generally In re Morrison*, 421 B.R. 381, 387 (Bankr. S.D. Tex. 2009) ("The failure to consolidate available defenses in one motion to dismiss generally constitutes waivers of the defenses. Fed. R. Bankr.P. 7012(h)(1); 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure §§ 1390–91 (3d ed.2004).").
[115] *Boston Telecommunications Group, Inc. v. Deloitte Touche Tohmatsu*, 249 F. App'x 534, 536 (9th Cir. 2007).

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

And the Liquidating Trustee has stated a claim upon which relief can be granted. Taking the well-pled facts as true and all inferences in favor of the Liquidating Trustee, the Palm Beach Funds hired Fulbright, bankruptcy specialists, who internally considered whether the Palm Beach Funds (its client) should consider filing for insolvency protection and knew of similarly situated and affiliated entities quickly seeking insolvency protection. Yet, Fulbright never advised the Palm Beach Funds of this possible course, or to seek alternative legal counsel. Furthermore, it was readily apparent to Fulbright that the Palm Beach Funds should consider this course and needed this advice, either from Fulbright or another law firm. Any attempt to hide behind the Retention Agreement's language should be rejected, as (i) an attorney's duties to her client can exceed a written retention agreement in circumstances such as these; and (ii) Fulbright itself did not comply with the Retention Agreement's scope of services limitation, and performed professional services for the Palm Beach Funds which exceeded and were expressly prohibited by the written 'scope' of retention.

Respectfully, the Motion to Dismiss should be denied.

**WHEREFORE,** the Plaintiff respectfully requests that this Court enter an Order: (i) denying the Motion to Dismiss; (ii) directing Fulbright to file an answer to the Complaint; and (iii) for any and all further relief this Court deems just and proper.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on February 26, 2013, a true and correct copy of the foregoing was served via the Court's Notice of Electronic Filing upon Registered Users on those parties listed on the attached Exhibit 1.

Dated: February 26, 2013

s/  Michael S. Budwick
Michael S. Budwick, Esquire
Florida Bar No. 938777
mbudwick@melandrussin.com
Solomon B. Genet, Esquire
Florida Bar No. 617911
sgenet@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

Attorneys for Plaintiff

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

# Mailing Information for Case 12-02123-PGH

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- Michael S Budwick    mbudwick@melandrussin.com,
  ltannenbaum@melandrussin.com;mrbnefs@yahoo.com
- Solomon B Genet    sgenet@melandrussin.com,
  ltannenbaum@melandrussin.com;mrbnefs@yahoo.com
- James N Robinson    jrobinson@whitecase.com, jjordan@whitecase.com

EXHIBIT 1